*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206
File Name: 06a0005p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

———————

GEORGE T. FRANKLIN,

> *Petitioner-Appellee/*
> *Cross-Appellant,*

Nos. 03-3636/3697

*v.*

CARL S. ANDERSON, Warden,

> *Respondent-Appellant/*
> *Cross-Appellee.*

Appeal from the United States District Court
for the Southern District of Ohio at Dayton.
No. 95-01007—Walter H. Rice, District Judge.

Argued: March 17, 2005

Decided and Filed: January 9, 2006

Before: BOGGS, Chief Judge; and BATCHELDER and CLAY, Circuit Judges.

———————

**COUNSEL**

———————

**ARGUED:** Heather L. Gosselin, ATTORNEY GENERAL'S OFFICE OF OHIO, Columbus, Ohio, for Appellant. Joseph E. Wilhelm, PUBLIC DEFENDER'S OFFICE, OHIO PUBLIC DEFENDER COMMISSION, Columbus, Ohio, for Appellee. **ON BRIEF:** Heather L. Gosselin, Charles L. Wille, ATTORNEY GENERAL'S OFFICE OF OHIO, Columbus, Ohio, for Appellant. Stephen A. Ferrell, PUBLIC DEFENDER'S OFFICE, OHIO PUBLIC DEFENDER COMMISSION, Columbus, Ohio, for Appellee.

BOGGS, C. J., delivered the opinion of the court, in which CLAY, J., joined. BATCHELDER, J. (pp. 18-19), delivered a separate dissenting opinion.

———————

**OPINION**

———————

BOGGS, Chief Judge. In December 1988, George Franklin was found guilty of two counts of aggravated burglary and one count of aggravated murder and was sentenced to death. He began a long process of appeals, with each state court affirming his convictions or dismissing his claims as *res judicata.* On petition for habeas corpus to the Southern District of Ohio, however, Franklin was found to have two viable claims: service of a biased juror and ineffective assistance of appellate counsel, neither of which the court found to be procedurally defaulted. The court granted a

conditional writ of habeas corpus on these two issues.  In addition, although denying Franklin's petition on the remaining 26 claims, the district court granted a certificate of appealability (COA) on three issues: ineffective assistance of trial counsel, discriminatory use of peremptory challenges by the prosecutor, and the prosecutor's failure to provide the defense with material exculpatory and impeachment evidence at trial.  Because Franklin did not object to the district judge's denial of habeas on any other issues, all other claims are forfeited on appeal and are not before this court. *United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981).  The State appeals the conditional grant of habeas, and Franklin cross-appeals the denial of habeas on the three issues certified for appeal.

<h1 style="text-align:center">I</h1>

Franklin was convicted of the brutal murder of Gerald Strauss in his Cincinnati home on the evening of July 23, 1988 and of the theft of a television from the nearby apartment of Rosha Winston seventeen days earlier.  The jury recommended the death penalty, and the judge sentenced Franklin to death in addition to two consecutive ten- to twenty-five-year terms of imprisonment for the aggravated burglaries at Strauss's and Winston's homes.  *State v. Franklin*, 580 N.E.2d 1, 3-5 (Ohio 1991).

Represented by new counsel, Franklin appealed his conviction through the Ohio courts. After the Ohio Supreme Court affirmed his conviction and sentence on direct appeal, a third set of attorneys took up his case and further attempted to secure relief in the Ohio courts, first by requesting that the Ohio Supreme Court recall its mandate and permit supplemental briefing on direct appeal and, when that request was denied without an opinion, *State v. Franklin*, Nos. C-930760, B-880 4127, Jan. 25, 1995, 585 N.E.2d 424 (1992), by seeking post-conviction relief. The Hamilton County Common Pleas Court denied the petition for post-conviction relief without an evidentiary hearing, a decision that was affirmed by the Hamilton County Court of Appeals. *See State v. Franklin*, 1995 WL 26281 (Ohio App.), *appeal not allowed*, 650 N.E.2d 479, *cert. denied*, 516 U.S. 950 (1995).  Franklin also sought delayed reconsideration in the Ohio Court of Appeals, and his motion was denied for failure to file within the ninety-day time limit. *State v. Franklin*, No. C-890028 (Ohio App. Mar. 3, 1994).

Franklin then sought a writ of habeas corpus in federal district court.  The district court referred the matter to a magistrate judge for a report and recommendations. The magistrate judge held an evidentiary hearing and issued a comprehensive report.  After amending the report slightly in response to objections filed by the parties, the magistrate judge recommended that the court grant the requested writ of habeas corpus with respect to Franklin's claim that his convictions and sentences were unconstitutional because one of the jurors could not impartially apply the law, a claim the magistrate found was not procedurally barred because Franklin had received ineffective assistance of appellate counsel on direct appeal.  The district court adopted the report and recommendation, granting a conditional writ of habeas corpus on the biased juror and ineffective assistance of appellate counsel claims and dismissing all other claims as meritless.  In this appeal, we are asked to consider five issues: (1) whether a juror, who was unable to follow the law, sat on Franklin's jury; (2) whether the prosecution dismissed prospective jurors for reasons of race; (3) whether the prosecution failed to provide Franklin with exculpatory material and impeachment evidence; (4) whether Franklin's trial counsel was ineffective for failing to conduct adequate investigations during the trial and the mitigation phases; and (5) whether his appellate counsel was ineffective.

As Franklin filed his Petition for Writ of Habeas Corpus on November 14, 1995, prior to the April 24, 1996 effective date of the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-132, 110 Stat. 1214 (1996) (AEDPA), we apply a pre-AEDPA standard of review. *Sowell v. Bradshaw*, 372 F.3d 821, 828 (6th Cir. 2004).  We review the district court's judgment *de novo*

and its findings of fact for clear error.  *Carter v. Bell*, 218 F.3d 581, 590 (6th Cir. 2000).  In addition, absent clear and convincing evidence, we presume the state court's findings of fact to be correct.  *See Wainwright v. Goode*, 464 U.S. 78, 85 (1983).  We may issue a writ of habeas corpus only if we find that the state court proceedings were fundamentally unfair due to a violation of the Constitution or other federal law.  *Sowell*, 372 F.3d at 828.

## II

Franklin did not raise the issues under consideration in this appeal on his direct appeal in the state courts, but rather raised them for the first time in his Motion to Recall the Mandate before the Ohio Supreme Court and then later in his post-conviction proceedings.  Therefore, the post-conviction courts refused to consider the merits of all of the claims, other than several of the ineffective assistance of counsel claims, on the ground that they were barred by *res judicata*.  In Ohio, *res judicata* bars state courts from considering constitutional claims in post-conviction collateral attacks when those claims have already or could have been fully litigated on direct appeal.  *Monzo v. Edwards*, 281 F.3d 568, 576 (6th Cir. 2002).  Absent cause or prejudice, when a habeas petitioner fails to obtain consideration of a claim by the state courts due to a state procedural rule that prevents the state courts from reaching the merits of the petitioner's claim, the claim is procedurally defaulted and may not be considered by the federal court on habeas review.  *Wainright v. Sykes*, 433 U.S. 72, 84 (1977); *Lancaster v. Adams*, 324 F.3d 423, 436 (6th Cir.), *cert. denied*, 540 U.S. 1004 (2003); *Seymour v. Walker*, 224 F.3d 542, 549-50 (6th Cir. 2000).  Demonstrating cause requires showing that an "objective factor external to the defense impeded counsel's efforts to comply" with the state procedural rule.  *Murray v. Carrier*, 477 U.S. 478, 488 (1986).  Demonstrating prejudice requires showing that the trial was infected with constitutional error.  *See United States v. Frady*, 456 U.S. 152, 169 (1982).

Consequently, we must first decide whether Franklin can show cause and prejudice to excuse his procedural default.  We focus on Franklin's claim of ineffective assistance of counsel, because such a claim can serve as both cause and prejudice, excusing a procedural default in an underlying substantive claim, as long as the petitioner can also show cause and prejudice to excuse the procedural default of the ineffective assistance claim itself.  *Edwards v. Carpenter*, 529 U.S. 446, 450-52 (2000).

To determine whether Franklin had cause for his procedural default, we apply the four-part test set forth in *Maupin v. Smith*.

> First, the court must determine that there is a state procedural rule that is applicable to the petitioner's claim and that the petitioner failed to comply with the rule.
> . . . .
> Second, the court must decide whether the state courts actually enforced the state procedural sanction.
> . . . .
> Third, the court must decide whether the state procedural forfeiture is an "adequate and independent" state ground on which the state can rely to foreclose review of a federal constitutional claim.
> . . . .
> Once the court determines that a state procedural rule was not complied with and that the rule was an adequate and independent state ground, then the petitioner must demonstrate . . . that there was "cause" for him to not follow the procedural rule and that he was actually prejudiced by the alleged constitutional error.

785 F.2d 135, 138 (6th Cir. 1986) (citations and footnote omitted).  We agree with the district court that Franklin's ineffective assistance of appellate counsel claim is not barred from review under the

*Maupin* test because at the time he filed his Motion for Delayed Reconsideration, in which he raised the claims he makes on appeal in the instant case, the Ohio courts did not have a "firmly established and regularly followed" procedural rule governing the timeliness of such motions. *James v. Kentucky*, 466 U.S. 341, 348 (1984).

Franklin filed a Motion for Delayed Reconsideration with the Ohio Court of Appeals on June 30, 1993, advancing thirty-four assignments of error, including the claim of ineffective assistance of appellate counsel. On that date, the Ohio rules controlling the filing of claims of ineffective assistance of appellate counsel through Motions for Delayed Reconsideration were somewhat unclear. One year earlier, the Ohio Supreme Court had decided *State v. Murnahan*, 584 N.E.2d 1204 (1992), holding that ineffective assistance of appellate counsel claims had to be brought under Ohio R. App. P. 26 (later to become Rule 26(A)), through an application for delayed reconsideration in the court of appeals in which the alleged error took place, *id.* at 1208-09. Prior to *Murnahan*, such claims had been brought in the regular post-conviction hearings before the trial court. *Ibid.* However, *Murnahan* did not establish a time period for filing Rule 26 motions.

Under Rule 26, as it existed at the time *Murnahan* was filed, a petitioner had ten days from the date the previous opinion was filed to file an application for reconsideration of any cause or motion submitted on appeal. Ohio R. App. P. 26(A). However, in deciding *Murnahan*, the Ohio Supreme Court had opined that the courts should take a more lenient attitude toward timeliness in ineffective assistance of counsel claims:

> Since claims of ineffective assistance of appellate counsel may be left undiscovered due to the inadequacy of appellate counsel or the inability of the defendant to identify such errors within the time allotted for reconsideration in the court of appeals or appeal to this court, it may be necessary for defendants to request delayed consideration. Therefore, in an individual case where a defendant has put forth a colorable claim of ineffective assistance of appellate counsel, where the circumstances render the application of *res judicata* unjust, and the time periods for reconsideration in courts of appeals and direct appeal to this court have expired, he or she must: (1) apply for delayed reconsideration in the court of appeals where the alleged error took place pursuant to App. R. 26 and 14(B), and if delayed reconsideration is denied, then (2) file for delayed appeal in this court pursuant to Section 8, Rule II of the Rules of Practice of the Supreme Court. Before granting reconsideration, the court of appeals should determine whether there are substantive grounds for relief.

*Murnahan*, 584 N.E.2d at 1209 (footnotes omitted); *see also Henderson v. Collins*, 101 F. Supp. 2d 866, 887 (S.D. Ohio 1999) (concluding that "neither the *Murnahan* decision nor Ohio App. R. 14(B) set an outer limit or absolute deadline that would have alerted Petitioner to a certain deadline for filing a *Murnahan* Application pursuant to the rule [announced in *Murnahan*]."), *vacated in part on other grounds*, 262 F.3d 615 (6th Cir. 2001). Furthermore, the *Murnahan* court specifically noted that the state appellate rules as then written may have been insufficient to provide the remedy set forth in its opinion. The opinion stated:

> [I]n light of the fact that Ohio has no statutory authority or court rules dedicated to the procedure to be followed by defendants who allege ineffective assistance of appellate counsel, we recommend that the Rules Advisory Committee appointed by this court review whether an amendment to App. R. 14(B) or a new rule should be adopted to better serve claimants in this position.

584 N.E.2d at 1209 n.6.

*Murnahan* led to the creation of a special Application to Reopen procedure, codified at Ohio R. App. P. 26(B). This rule includes a timeliness provision that requires the application to reopen to be filed within ninety days of the journalization of the appellate judgment unless the applicant shows good cause for filing at a later time. R. 26(B)(1). Rule 26(B) went into effect on July 1, 1993–the day *after* Franklin filed his Motion for Reconsideration under R. 26. Nonetheless, the Ohio Court of Appeals applied the 26(B) standard to Franklin's motion, dismissing it because he had not filed within 90 days of the journalization of his initial appellate judgment, and notwithstanding the fact that he was represented by the same counsel at his appeals before the Ohio Court of Appeals and the Ohio Supreme Court. In a footnote to the decision, the court noted that applying App. R. 26(B) was not unreasonable, even though it had not been in force on the day Franklin filed his motion, because under the previous rule, he would only have had 10 days to file, whereas under the new rule he had 90 days.

If we follow the reasoning of this footnote, and take as our procedural starting point the rules that were actually in place on the day that Franklin filed his Motion for Reconsideration, there would be no procedural default. As discussed above, *Murnahan* placed no time limit on applications and specifically noted that the 10-day limit in the then-current Rule 26 was too short. The State points to *Hicks v. Collins*, 384 F.3d 204 (6th Cir. 2004), as holding that in the area of the Ohio First District Court of Appeals, in which Franklin filed his Motion for Reconsideration, the rule was established that (1) ineffective assistance of appellate counsel claims had to be brought according to the then-current Rule 26 (later 26(A)), and (2) Rule 26 had an enforced 10-day limit on filing. However, *Hicks* is inapposite here because it applies to a time before *Murnahan*. In *Hicks*, the defendant brought his ineffective assistance of counsel claim in a post-conviction proceeding, even though it was established in that District that the claim should have been brought in a Motion for Reconsideration. His claim was dismissed, and he waited approximately 18 months to file the Motion correctly. In the interim, the Ohio Supreme Court ruled on *Murnahan*, and the Appeals Court dismissed Hicks's motion as untimely. We, in upholding the procedural default, relied on the fact that pre-*Murnahan* there was a procedure that Hicks could have followed in a timely fashion, so his failure to do so could not constitute cause for his later procedural default. 384 F.3d at 212.

If, on the other hand, we consider the Ohio Court of Appeal's application of the new Rule 26(B) to Franklin's motion, we must also find that the State does not fulfill the elements of *Maupin* test necessary to bar review. The first *Maupin* factor requires that there was a "state procedural rule that is applicable to the petitioner's claim and that the petitioner failed to comply with the rule." 785 F.2d at 138. For the Rule 26(B) requirement to be applicable to Franklin, it would have to have been applied retroactively. However, the United States Supreme Court has held that a petitioner relying on prior rulings cannot be held to new procedural requirements that go into effect after petitioner raised his claim. *Ford v. Georgia*, 498 U.S. 411, 424 (1991). Furthermore, even if we were to find that the new Rule 26(B) procedures were applicable to Franklin, the Supreme Court in *Ford* concluded that because the new rule had not been announced by the time Ford could have raised his claim in a timely manner, it was inadequate to serve as an independent state ground for procedural default purposes because it was not "'firmly established and regularly followed' by the time as of which it [was] to be applied." *Ibid.* (quoting *James v. Kentucky*, 466 U.S. 341, 348 (1984)). Therefore, the application of Rule 26(B) would not meet the third prong of the *Maupin* test that the rule be an "adequate and independent" state ground for foreclosing review.

Rule 26(B) also fails to meet the second part of the *Maupin* test, that courts "actually enforced the state procedural sanction." 785 F.2d at 138. A review of the relevant case law reveals that the Ohio Supreme Court has been erratic in its handling of untimely Rule 26(B) applications in capital cases. For several years following the enactment of amended Rule 26(B), the Ohio Supreme Court regularly enforced the rule's timeliness requirements. *See, e.g., State v. Mason*, 734 N.E.2d 822, 822-23 (Ohio 2000); *State v. Dunlap*, 730 N.E.2d 985, 986 (Ohio 2000); *State v. Ballew*, 729 N.E.2d 753, 754-55 (Ohio 2000); *State v. Davis*, 714 N.E.2d 384, 385-86 (Ohio 1999);

*State v. Dennis*, 713 N.E.2d 426, 427 (Ohio 1999); *State v. Fox*, 700 N.E.2d 1253, 1254 (Ohio 1998); *State v. Hill*, 677 N.E.2d 337, 338 (Ohio 1997); *State v. Whalen*, 660 N.E.2d 1174, 1175 (Ohio 1996); *State v. Reddick*, 647 N.E.2d 784, 786 (Ohio 1995).  However, in 2000 it began ignoring the lower courts' dismissals of Rule 26(B) applications as untimely and affirming the dismissal of the applications on the merits.  *See State v. Mack*, 805 N.E.2d 1108, 1109 (Ohio 2004); *State v. Goff*, 784 N.E.2d 700, 701 (Ohio 2003); *State v. Mitts*, 784 N.E.2d 698, 699-700 (Ohio 2003); *State v. Bryant-Bey*, 776 N.E.2d 480, 481-82 (Ohio 2002); *State v. Sneed*, 774 N.E.2d 1216, 1217-18 (Ohio 2002); *State v. Davie*, 772 N.E.2d 119, 120-21 (Ohio 2002); *State v. Smith*, 766 N.E.2d 588, 589-90 (Ohio 2002); *State v. Sanders*, 761 N.E.2d 18, 19-20 (Ohio 2002).  *See State v. Moore*, 758 N.E.2d 1130, 1132-33 (Ohio 2001); *State v. Carter*, 757 N.E.2d 362, 363-64 (Ohio 2001); *State v. Biros*, 754 N.E.2d 805, 806-07 (Ohio 2001); *State v. Brooks*, 751 N.E.2d 1040, 1042-43 (Ohio 2001); *State v. Jalowiec*, 751 N.E.2d 467, 467-68 (2001); *State v. Palmer*, 749 N.E.2d 749, 751-52 (Ohio 2001); *State v. Hooks*, 748 N.E.2d 528, 530-31 (Ohio 2001); *State v. Bradley*, 747 N.E.2d 819, 820 (Ohio 2001); *State v. Sheppard*, 744 N.E.2d 770, 771 (Ohio 2001); *State v. Hill*, 740 N.E.2d 282, 283-84 (Ohio 2001); *State v. Jells*, 739 N.E.2d 345, 346 (Ohio 2000).  Recently, in yet another reversal of practice, the Ohio Supreme Court has renewed affirming the dismissal of Rule 26(B) applications in capital cases as untimely.  *See State v. Gumm*, 814 N.E.2d 861, 862-63 (Ohio 2004); *State v. LaMar*, 812 N.E.2d 970, 971-72 (Ohio 2004); *see also State v. Myers*, 810 N.E.2d 436, 437-38 (Ohio 2004) (court affirms dismissal as the application was both untimely and meritless).

In light of the fluctuating treatment of Rule 26(B) applications by the Ohio Supreme Court, we cannot hold that the state courts have regularly followed and enforced the Rule's timeliness requirement.  The Ohio Supreme Court's treatment of Rule 26(B) applications does not constitute on "occasional act of grace" in excusing the Rule's requirements, *Hutchison v. Bell*, 303 F.3d 720, 737 (6th Cir. 2002) (quoting *Coleman v. Mitchell*, 268 F.3d 417, 429 (6th Cir. 2001)), nor is the Supreme Court applying a clearly delineated exception to the timeliness requirement in these capital cases.  *See Hutchison*, 303 F.3d at 738-39.  While it could be argued that the rule was regularly established and followed at the time that the Ohio Supreme Court ruled on Franklin's Rule 26(B) application, such an interpretation would render an injustice as the Ohio Supreme Court apparently would not have applied the timeliness bar if Franklin had delayed even further in filing his Rule 26(B) application and submitted it for review to the Ohio Supreme Court after 2000.  Therefore, Rule 26(B) is not an adequate and independent state rule that can preclude consideration of Franklin's ineffective assistance of appellate counsel claim.

### III

As Franklin has shown cause for procedurally defaulting his ineffective assistance of counsel claim, we turn now to the question of whether any of his claims rise to the level of constitutional defects such that appellate counsel's failure to raise them amounted to ineffective assistance of counsel.  We first consider the claim that a juror who was biased because she could not follow the law sat on Franklin's jury.  As explained below, we affirm the district court's judgment that this case warrants a grant of a conditional writ of habeas corpus.  Since all of the claims on petitioner's cross-appeal relate to claims of trial-type error, those claims are rendered moot by a grant of habeas corpus, and we will not consider them further.

Franklin contends that one juror, Patricia Arthur, was biased because she misunderstood the presumption of innocence, Franklin's right not to testify, and the burden of proof in the case.  Franklin also asserts that Arthur was predisposed to find that he had committed the crime just because he was the defendant in the case.  The label "biased" is applied to two sorts of jurors.  In the usual sense, a biased juror is one who has a predisposition against or in favor of the defendant.  In a more limited sense, a biased juror is one who cannot "conscientiously apply the law and find the facts." *Wainwright v. Witt*, 469 U.S. 412, 423 (1985).  While we do not agree with Franklin that

Juror Arnold was "biased," in the sense of having a predisposition or prejudice against him, we, nonetheless, do find that she was not an impartial juror because she demonstrated that she could not comprehend the legal standard she was supposed to apply.

To understand Franklin's claim, it is necessary to quote at length the voir dire and later questioning of Juror Arthur:

> **Defense**: Most people have a feeling somebody's charged with a crime–you all watch television and you've seen L.A. Law. Some of you put it down as your favorite program, so to speak. Pretty good show. You see somebody charged get up there and say I didn't do it and here's my side of the story. Fairly common reaction for everybody. In this case is there anybody here that feels George [Franklin] should get on that stand, testify and tell you his side of the story or whatever he may feel to be appropriate? Anybody feel that way? Nobody wants to hear George say anything?
>
> **Arthur**: To prove he's innocent.
>
> **Defense**: Do you feel he should get on the stand to prove he's innocent?
>
> **Arthur**: To me, I do, you know. I do.
>
> . . . .
>
> **Court**: Let me interject. Three of the jurors have said what you have said and what you think. The law is that Mr. Franklin doesn't have to do anything at a trial, except be here. He's not required to prove that he's innocent. He's not required to put on any evidence and if he chooses to follow that route, you're not allowed, under the law, to consider that against him because the burden of proof is upon the prosecution. The three of you that answered the way you did, could you accept my explanation of that?

JA 1021-23. The record does not reflect that any of the prospective jurors responded to the court's question. During the subsequent individual questioning of Arthur by the prosecutor, the following exchange occurred:

> **Prosecutor**: Considering all the questions that were briefly asked by counsel and the judge, do you have any answers at this point in time that would cause you to hold up your hand, anything different than before?
>
> **Arthur**: No, I don't.
>
> . . . .
>
> **Prosecutor**: You understand it's our burden of proof and we must prove each and every element of the crimes and specification charged beyond a reasonable doubt, do you understand that?
>
> **Arthur**: Yes, I do.
>
> **Prosecutor**: Do you have any problem with that?
>
> **Arthur**: No, I don't have any problem with it.

. . . .

> **Prosecutor**: If we fail to prove one or more of the elements of the offense, you would acquit the defendant or find him not guilty, is that correct?
>
> **Arthur**: Yes, that's right, if it's proven,  yes.
>
> **Prosecutor**: If we prove each and every one of those elements beyond a reasonable doubt, can you join with the rest of the panel and sign a verdict of guilty?
>
> **Arthur**: Yes, if it's proven, if it's proven guilty.
>
> . . . .
>
> **Prosecutor**: So, if the facts warrant and the law allows it, can you join with eleven other jurors in a verdict of guilty, knowing that the verdict would lead to this man's death?
>
> **Arthur**: Yeah, if he's proven it's the right thing, I can.
>
> . . . .
>
> **Prosecutor**: Do you know of any reason, searching your mind at this point, why you could not be a fair and impartial juror in this case?
>
> **Arthur**: No, I don't.
>
> **Prosecutor**: You can be just as fair to the State of Ohio as you can to the defendant?
>
> **Arthur**: Yes, I can.
>
> **Prosecutor**: And you'll listen to all the evidence?
>
> **Arthur**: Yes, I will, closely to them.

JA 1085-91.  The State then passed Arthur for cause.  The following dialog took place between Juror Arthur and defense counsel:

> **Defense**: As you sit there now, you consider George, well, he's just George. He's sitting there, he's on trial. We're officers of the court. He's sitting there he's the defendant, but as to being guilty, you have no idea whether he's guilty of this crime?
>
> **Arthur**: No, I don't have no idea. But, just like the counselor said before, I would have to listen closely to why it happened.
>
> **Defense**: Or how it happened?
>
> **Arthur**: Yes, that's right.
>
> **Defense**: Or whether George had anything to do with it?
>
> **Arthur**: Yes, that's right.
>
> **Defense**: In other words, one of the elements is to prove George has something to do with this crime; do you understand that?

**Arthur**: Uh huh.

**Defense**: And, although, if the prosecution was just to put on those pictures [of the victim] and say he's dead, I mean George was sitting here, that, alone, would not bring you to an opinion of his guilt or innocence?

**Arthur**: No, because like I said, I mean like he says, testimony, but I would just wonder why would he do it, you know?

**Defense**: Well, you say why would he do it, or if he did it, would you like to know that, too?

**Arthur**: If he did it or why did he do it.

**Defense**: First of all, you'd like to know if he did it?

**Arthur**: Yes, if he did it.

**Defense**: If you saw those pictures and the prosecutor pointed and said he did it, would that be enough to convince you?

**Arthur**: No.

**Defense**: In other words, you want to know more, some evidence?

**Arthur**: That's why I said what I did.

. . . .

**Defense**: I guess what we're asking for is just a fair trial.

**Arthur**: That's right.

. . . .

**Defense**: And as I say that, there's this innocence, presumption of innocence, and you can accept that? In other words, you said that one of the things you said that, I think, on the general questions was you sort of require George to get on the stand and prove his innocence. Would you do that? Do you mean that really?

**Arthur**: I believe that he should bring himself out, if he didn't do it, just testify, tell what happened, you know.

**Defense**: And that is –

**Court**: It's time for the court to interrupt. Ms. Arthur, that's not the law, okay? I've sat here plenty of times with a jury and I said to myself it would be nice if this guy would tell what happened. That's not the law. He's not required to do that and he's not required to do anything. He comes in here cloaked with the presumption of innocence. As he sits here now he's presumed innocent and under the Constitution, he's not required to do anything at all. Now, having told you that, can you abide by that and in your mind not require him to do anything?

**Arthur**: No, I don't require, but I just think, to tell you the truth, Judge, I don't require, but I just think if the jury would listen, like everybody says, he wants to have a fair trial. If the jury would listen to both of the lawyers, you know, and whatever evidence they had to prove him not guilty, I'd sit here and listen to it.

**Court**: Okay, but my point is that some point the prosecution will stop presenting evidence. At that point, once the state has stopped producing evidence, then the defense may produce evidence, if they so desire.

**Arthur**: Please?

**Court**: Once the state has stopped producing evidence, then the defense, I'm talking about Mr. Franklin, through his lawyers, may start producing evidence, if they wish, but they're not required to do that. They're not required to do anything. They could stop right there, if they wanted, have me give them the final instructions and have you go out and make your decision on the case.

**Arthur**: Even if the evidence is not against him, that they have brought evidence to find that he's not guilty.

**Court**: I missed that. I'm missing out.

**Arthur**: You said if the law would provide, stop providing evidence. I said even if they're for him and they're not against him, not saying he's not guilty, but they're proving, have brought evidence? You see what I'm talking about?

**Court**: I see what you're talking about, but do you see what I'm talking about? That is, they're not required to produce anything. The defendant isn't required to do anything in the trial except show up, do you understand that?

**Arthur**: Uh huh.

**Court**: And you're not allowed to hold it against him if he doesn't produce anything. You might be sitting there thinking maybe he could clear something up or maybe another witness could clear something up, but they're not required to do a thing. Can you abide by that and understand that?

**Arthur**: I guess so, if that's the law.

**Court**: That's the law. Mr. Schmidt, do you have any further questions?

**Defense**: I'm still not quite sure, Your Honor. In other words, I guess, Mrs. Arthur, and, again, this is in fairness, being fair to you, too, if we were to try the case and the state put on evidence and George didn't take the stand, would you hold that against him?

**Arthur**: No, I wouldn't hold it against him.

**Defense**: Would you think that would have something to do with his guilt?

**Arthur**: No.

**Defense**: You would think you wouldn't consider that at all?

**Arthur**: No, I wouldn't.

. . . .

**Defense**: . . . The way this goes, Mrs. Arthur, by law and by rules of the court, the State of Ohio has the burden of proving the elements of the crime, all right?

**Arthur**: Uh huh.

**Defense**: The state will go first and the law also says that they will go last. They will have the final argument and then the judge will give you the law: do you understand?

**Arthur**: Uh huh.

**Defense**: Actually, they will paint a very dark picture or try to paint a dark picture, if they're able. That's their duty. But you've got to keep an open mind until you hear the defense, or you hear the law as it applies to what you heard. Can you do that?

**Arthur**: Yes, I could.

. . . .

**Defense**: And if the right thing, if [the death penalty] was the right thing, you would do it, right?

**Arthur**: That's right.

**Defense**: What do you consider to be the right thing?

**Arthur**: Well, what I consider to be the right thing is if justice is done, either way. If he's proven guilty, then justice is done. If he's proven not guilty, then justice is done.

JA 1093-1108.  Defense counsel later passed Juror Arthur for cause.

After the jury was impaneled, a jury view of the scene of the crime was conducted.  During the viewing, Juror Arthur asked where "he" got into the house.  Afterward, the judge called her into chambers, with the attorneys, and the following conversation took place:

**Court**: Okay, Mrs. Arthur, the reason we called you in here is because it's been reported back to me that when the jurors were out on the view that you might have asked some questions while you were out there and specifically the way it was put to me was that you may have asked a question something like this: How did he get in? Did he get in through the window downstairs?

**Arthur**: No, the only thing I asked, I said, I didn't ask if he got in the window downstairs, I asked was that the window he got in, the window when they showed. That's the only thing I asked.

**Court**: The thing I need to know from you is when you say he, when you're talking about he getting in. I need to know have you formed a predisposition in your mind about this man out here, Mr. Franklin?

**Arthur**: No, I hadn't formed no position. All I just want to know is that was the house. I hadn't formed anything.

**Court**: Who were you talking about when you said that he?

**Arthur**: I was talking about him, but I hadn't formed anything yet.

**Court**: When you talk about him, are you already assuming he broke into the house, Mr. Franklin, the man out here?

**Arthur**: All I know is they told me he burglarized two places and I didn't know if those were the houses or not.

**Court**: Well, the fact, if somebody told you he burglarized two places, can you accept the fact that doesn't mean the man did it, just because somebody said he did it?

**Arthur**: All I know is what I was told. That's all I know.

**Court**: Mr. Schmidt [defense counsel], you want to tell us what your version of it is?

**Schmidt**: Yes, sir. When we were upstairs Mrs. Arthur said where did he break in and that was all she said.

**Arthur**: That's all I said. That's all I said. I didn't say anything else.

**Court**: Okay, are you able to keep an open mind in this case and wait until you hear all the evidence in this case?

**Arthur**: Yes, I will, because I hadn't formed nothing.

**Court**: Counsel, want to ask her any questions? Mr. Rosenwald [defense counsel]?

**Rosenwald**: . . . . Miss Arthur, who told you he burglarized two places?

**Arthur**: The only thing I heard, and I might have misunderstood it, I thought she said when we were talking in the room that he had burglarized two places.

**Rosenwald**: When we were asking the questions of the jurors?

**Arthur**: That's all I know. Nobody did tell me. That's just what I got from you all.

**Rosenwald**: Do you have the impression, feeling, from what you're saying that George did break into two places?

**Arthur**: I really don't know, sir.

**Rosenwald**: All right, that's all.

**Court**: Anything further? Anything you gentlemen want to ask her?

**Prosecutor**: We were saying that, also. Do you understand that's what he's charged with and now the evidence will show whether he did it or not?

**Arthur**: Right, that's all I know, I don't know, sir. That's all I know.

JA 1551-54.  Defense counsel made a motion for a mistrial based upon Arthur's comments at the jury view.  The judge denied the motion, saying, "I believe this jury can be fair and impartial and I heard her answers to the questions and I observed her demeanor . . . ."

Relying on this record, the district court found that Juror Arthur was biased and that therefore a new trial was warranted.  We agree with the district judge's conclusion but point out that Juror Arnold was biased because she could not understand the law rather than because she had a preexisting opinion about Franklin.

The Supreme Court has repeatedly held, pre-AEDPA, that juror bias is a factual issue and that reviewing courts must give the factual assessments of the trial judge a presumption of correctness subject to the exceptions enumerated in 28 U.S.C. § 2254(d).  *See Thompson v. Keohane*, 516 U.S. 99, 111 (1995); *Wainright v. Witt*, 469 U.S. 412, 431 (1985); *Patton v. Yount*, 467 U.S. 1025, 1036 (1984).  The exception relevant in this case is whether "the factual determination is not fairly supported by the record . . . ."  28 U.S.C. § 2254(d)(8)(1994), *amended by* 28 U.S.C. § 2254(d)(2).

Under this standard, we cannot hold that the trial judge's decision that Juror Arthur's statement at the jury viewing and her subsequent statements in the conversation with the judge did not indicate bias was not fairly supported by the record.  Juror Arthur stated unequivocally that she had not made up her mind about Franklin's guilt.  As the Warden points out, Juror Arthur's comments at the viewing could well be understood to indicate that she was asking whether this was the window the prosecution *said* the defendant had climbed through, without that question indicating that she believed the prosecution's story.  After discussing the matter with Juror Arthur, observing her demeanor, and listening to her responses, the trial judge specifically stated that he believed she could be impartial and fair.  As nothing on the record demands that we find otherwise, we are bound to defer to the trial judge's finding.

Juror Arthur's statements at voir dire, however, require a different conclusion because they leave us with the conviction that she so completely misunderstood the presumption of innocence and burden of proof that she could not have made a fair assessment of the evidence of Franklin's guilt.  In her voir dire testimony, Juror Arthur made at least five statements indicating that she did not understand that Franklin was not required to prove himself not guilty:

1.   [I think he needs to] prove he's innocent.
2.   I believe that he should bring himself out, if he didn't do it, just testify, tell what happened, you know.
3.   I just think, to tell you the truth, Judge, I don't require, but I just think if the jury would listen, like everybody says, he wants to have a fair trial. If the jury would listen to both of the lawyers, you know, and whatever evidence they had to prove him not guilty, I'd sit here and listen to it.
4.   Even if the evidence is not against him, that they have brought evidence to find that he's not guilty.
5.   If he's proven guilty, then justice is done.  If he's proven not guilty, then justice is done.

Three times the judge intervened to explain the law to her.  The second two times, during her individual voir dire, she professed–albeit somewhat reluctantly, saying, "I guess so, if that's the law"–to understand the judge's explanations.  Yet despite the judge's repeated attempts to rehabilitate her, the last thing she said in her voir dire was: "If he's proven guilty, then justice is done. If he's proven not guilty, then justice is done."  Juror Arthur assured counsel and the judge that she would consider all of the evidence before making a decision, and there is no reason to

disbelieve her.  Yet, that she would consider all of the evidence does not remove the fact that she also seemed to expect some of that evidence to come from Franklin by way of proof of his innocence.

In the *Witherspoon* line of cases, the United States Supreme Court has addressed the question of prospective jurors excluded because of their insistence upon or unwillingness to find a sentence of death.  *Wainright v. Witt*, 469 U.S. 412 (1985)*; Adams v. Texas*, 448 U.S. 38 (1980); *Lockett v. Ohio*, 438 U.S. 586 (1978); *Witherspoon v. Illinois*, 391 U.S. 510 (1968)*.*   Although these cases dealt with the exclusion of jurors who expressed the opinion that they could not, or might not be able to, follow the law, they also made the more general point that a jury should be composed of jurors who "will consider and decide the facts impartially and conscientiously apply the law as charged by the court." *Adams*, 448 U.S. at 45.   Jurors who cannot apply the law are not impartial. *Wainright*, 469 U.S. at 423.

Although we normally defer to the assessment of the trial judge, who hears the prospective juror's tone of voice and sees her demeanor, in this case, the cold record alone is so extensive and so persuasive that it outweighs our presumptive deference. Juror Arnold five times gave the definite impression that she could not faithfully apply the law concerning the burden of proof because she failed to understand it.  Even after she was corrected three times by the judge, she still insisted with her last statement that the defendant had to be proven innocent.  *Cf. Wainright*, 469 U.S. at 434 (juror who displayed inability to follow the law four separate times was correctly excused).  While we appreciate the judge's attempts to rehabilitate this juror, he had a duty to dismiss a prospective juror who could not follow the law. *Hughes v. United States*, 258 F.3d 453, 464 (6th Cir. 2001). As such, the trial court's failure to dismiss her constituted manifest error and does not merit the presumption of correctness normally due trial court factual findings. *See Hill v. Brigano*, 199 F.3d 833, 844-45 (6th Cir. 1999).

"The seating of a biased juror who should have been dismissed for cause requires reversal of the conviction." *Hughes v. United States*, 258 F.3d 453, 463 (6th Cir. 2001) (citing *United States v. Martinez-Salazar*, 528 U.S. 304, 316 (2000)).  "'Failure to remove biased jurors taints the entire trial, and therefore . . . [the resulting] conviction must be overturned.'" *Ibid.* (quoting *Wolfe v. Brigano*, 232 F.3d 499, 503 (6th Cir. 2000)).  There is no situation under which the impaneling of a biased juror can be excused.  "The impaneling of a biased juror warrants a new trial. . . . The 'presence of a biased juror cannot be harmless; the error requires a new trial without a showing of actual prejudice.'" *Ibid.* (quoting *United States v. Gonzalez*, 214 F.3d 1109, 1111 (9th Cir. 2000)). Accordingly, the State can make no argument that Franklin's trial counsel acted strategically in keeping Juror Arthur on the panel because she was, like Franklin, African-American. To permit this would be to allow trial counsel to waive the defendant's right to an impartial jury.[1] *Ibid*.

The service of a biased juror was a constitutional defect that should have been, but was not, raised on direct appeal.  Consequently, the failure of Franklin's appellate counsel to appeal this issue amounted to ineffective assistance of counsel and allows Franklin to show the prejudice required to overcome his procedural default.

---

[1]However, we note that this holding should not be construed so broadly as to eliminate our usual deference to trial counsel's assumed voir dire strategy.  Counsel may well have reasons for wanting jurors who are confused or ignorant, and we do not intend here to give defendants a free pass to argue for ineffective assistance of counsel any time a prospective juror is seated who demonstrates some lack of clarity about the law.  We consider the circumstances in this case to merit particular scrutiny because of the length the judge and counsel went to attempt to explain the burden of proof to Juror Arthur and her continued inability to understand that Franklin did not have to prove himself innocent.

**IV**

The district court found that Franklin's appellate counsel provided ineffective assistance to him during his direct appeal to the Ohio Court of Appeals and to the Ohio Supreme Court by (1) failing to consult with their client, (2) failing to provide him with any real opportunity to participate or have input in his appeal, and (3) failing to raise the issue respecting Juror Arthur's bias on direct appeal.

A criminal appellant is constitutionally entitled to the effective assistance of counsel in his direct appeal. *Evitts v. Lucey*, 469 U.S. 387, 396 (1985); *Joshua v. DeWitt*, 341 F.3d 430, 441 (6th Cir. 2003). In *Mapes v. Coyle*, 171 F.3d 408, 427-28 (6th Cir. 1999), the court attempted to provide a non-exclusive list of factors to consider when defining deficient performance:

1.  Were the omitted issues "significant and obvious?"
2.  Was there arguably contrary authority on the omitted issues?
3.  Were the omitted issues clearly stronger than those presented?
4.  Were the omitted issues objected to at trial?
5.  Were the trial court's rulings subject to deference on appeal?
6.  Did appellate counsel testify in a collateral proceeding as to his appeal strategy and, if so, were the justifications reasonable?
7.  What was the appellate counsel's level of experience and expertise?
8.  Did the petitioner and appellate counsel meet and go over possible issues?
9.  Is there evidence that counsel reviewed all the facts?
10. Were the omitted issues dealt with in other assignments of error?
11. Was the decision to omit an issue an unreasonable one which only an incompetent attorney would adopt?

*Ibid.* In addition to the *Mapes* factors, a habeas court may also consider "[p]revailing norms of practice as reflected in American Bar Association standards and the like." *Strickland v. Washington*, 466 U.S. 668, 688 (1984). The ABA Standards for Criminal Justice instruct that "[a]ssigned counsel has a special responsibility to develop a relationship of trust and confidence with the client so that the client will appreciate that the lawyer knows the case and has the client's best interests clearly in mind." Comment to ABA Standard for Criminal Justice 4-8.3 (2d ed. 1980). Standard 4-3.8 itself states that, "[t]he lawyer has a duty to keep the client informed of the developments in the case and the progress of preparing the defense."

Franklin's appellate counsel made many of the errors included in the *Mapes* list. First, counsel failed to raise the juror bias issue or any of the other issues for which the district court issued a COA. Appellate counsel is, of course, not required to raise every non-frivolous issue on appeal. "As the Supreme Court has recently observed, it is difficult to demonstrate that an appellate attorney has violated the performance prong where the attorney presents one argument on appeal rather than another. In such cases, the petitioner must demonstrate that the issue not presented 'was clearly stronger than issues that counsel did present.'" *Caver v. Straub*, 349 F.3d 340, 348 (6th Cir. 2003) (quoting *Smith v. Robbins*, 528 U.S. 259, 289 (2000)) (internal citations omitted); *see also McFarland v. Yukins*, 356 F.3d 688, 710-12 (6th Cir. 2004). Just as in *Caver*, "[i]n the instant case, there can be little doubt but that the omitted issue . . . was much stronger than the issues [petitioner's] appellate counsel presented." *Ibid.* (footnote omitted). Franklin himself suggested fourteen issues for his attorneys to raise on appeal. Each of these issues found its way into his habeas petition, including the biased juror, *Batson*, and ineffective assistance of trial counsel errors that are on appeal here, while none of the issues counsel raised on appeal made it past the magistrate judge below. His attorneys ignored his suggestions, telling him they were frivolous, had already been litigated, or could be raised on post-conviction review. They also failed to tell Franklin that he could file a pro se supplementary brief raising additional issues they refused to include.

More egregious, appellate counsel never met Franklin or even spoke to him over the telephone. His lead counsel, Roxann Dieffenbach, only corresponded with him through letters. His other counsel, Candace Greenham, had no contact with him at all. Between December 4, 1989, and November 26, 1991, Dieffenbach's total communication with Franklin consisted of 26 letters, none longer than one page. Her first letter, sent on December 4, 1989, and thus her first contact with Franklin, came eleven months after she had been appointed to represent him and three weeks before she had to file his brief with the Court of Appeals. Although she asked him for input on the brief, she failed to respond to his December 19, 1989, request for a copy of his transcript until April 22, 1990, and she only sent him a copy of the Court of Appeals brief one month after it had been submitted to the court.

Twice Franklin asked Dieffenbach to withdraw from his case. The first time she responded only by saying the she had argued his case before the Court of Appeals. The second time she responded only by saying that she had argued his case before the Ohio Supreme Court. At no point, therefore, did Franklin's counsel meet the ABA guidelines of keeping Franklin "informed of the developments in the case" or of developing a relationship of trust with him.

Counsel also failed adequately to represent Franklin at oral argument before the Ohio Court of Appeals. The night before the argument before the Court of Appeals, Greenham had a family emergency and could not attend the argument. The court denied Dieffenbach's request for an extension. At oral argument, Dieffenbach refused to discuss or answer questions on any part of the brief that Greenham had prepared. Having counsel refuse to address half of the issues raised before the appellate court is like having trial counsel refuse to attend half the trial. On those issues, therefore, Franklin suffered a total lack of meaningful advocacy. *Bell v. Cone*, 535 U.S. 685, 697 (2002).

Before the Ohio Supreme Court, counsels' behavior was unprofessional. As the magistrate judge wrote,

> The transcript of their arguments include five instances of wholly inappropriate laughing on the part of both of Franklin's lawyers, an admission by Dieffenbach that she may be wrong about one of her contentions, equivocal responses to questions from the justices, and Greenham's introductory statement that she "wished we had more to say on Mr. Franklin's behalf." In addition, Franklin's counsel displayed a lack of familiarity with the facts relevant to the arguments she made to the court. For instance, Greenham did not recall the length of the videotape she argued was gruesome and prejudicial, and stated that "apparently it was very graphic," strongly suggesting she had not even viewed the allegedly offending videotape herself. Dieffenbach did not know how many points of identification existed between Franklin's fingerprint and the print lifted from the champagne bottle found in the Strauss apartment. Greenham displayed an astounding lack of solemnity under the circumstances when she employed the term "overkill" to describe the photographic and videographic evidence, then laughed and said "Excuse the pun."

JA 615.

There is, thus, no question that Franklin's appellate counsels' performance was deficient. Although we do not believe that appellate counsels' shortcomings at oral argument necessarily prejudiced Franklin, we find that counsel did not meet the ABA standards in their dealings with him concerning his appeals, and we hold that the failure to raise the biased juror issue on appeal was prejudicial, since no claims of strategy can excuse the seating of a juror unable to follow the law.

**V**

In sum, Franklin's ineffective assistance of counsel claim is not procedurally defaulted because the Ohio Court of Appeals's refusal to hear Franklin's Motion for Reconsideration was not based on an adequate and established state procedural rule and because his appellate counsels' failure to raise the constitutionally defective service of a biased juror rose to the level of prejudice. Therefore, we **AFFIRM** the district court's grant of habeas corpus and decline to consider Franklin's cross-appeals on the three issues certified for appeal.

---

**DISSENT**

---

ALICE M. BATCHELDER, dissenting. I respectfully dissent. I would hold that Franklin's claims should be dismissed for procedural default under *Maupin v. Smith* because Ohio's First District Court of Appeals relied on independent and adequate state grounds when it denied Franklin's Application for Delayed Reconsideration. 785 F.2d 135 (6th Cir. 1986). Franklin clearly failed to comply with a state procedural rule that was both applicable to his case and enforced by Ohio courts.[1]

The majority holds that the third prong of the *Maupin* test was not satisfied due to uneven application of the good cause exception, but prior Sixth Circuit cases suggest otherwise. Under that prong of the test, this court must decide whether the procedural rule relied upon by the state is an "'adequate and independent' state ground on which the state can rely to foreclose review of a federal constitutional claim." *Maupin*, 785 F.2d at 138. To be "independent," the procedural rule must rely in no part on federal law. *Coleman v. Thompson*, 501 U.S. 722, 732-33 (1991). To be "adequate," the rule must have been firmly established and regularly followed by state courts at the time of its application to Franklin. *Ford v. Georgia*, 498 U.S. 411, 423-24 (1991). A rule is firmly established if, at the time of the petitioner's actions giving rise to the default, the petitioner could be deemed to have been apprised of the rule's existence. *Hutchinson v. Bell*, 303 F.3d 720, 737 (6th Cir. 2002). Finally, whether a rule is regularly followed is determined as of the date of the petitioner's conviction. *Rogers v. Howes*, 144 F.3d 990, 994 n.5 (6th Cir. 1998).

This circuit's precedent reveals that the rule applied to Franklin was both independent and adequate at the time of its application. Significantly, Franklin's case arose in Hamilton County. In *Sowell v. Bradshaw*, this court declined to review an ineffective assistance claim based on a Rule 26 procedural bar. 372 F.3d 821, 827 n.2 (6th Cir. 2004). We held that "the procedure required by *Murnahan* was the procedure that had been required since at least 1983 by the Ohio Court of Appeals in Hamilton County, where [the petitioner's] trial and appeal were conducted." *Id.* (citing *Ohio v. Rone*, No. C-820640, 1983 WL 5172, at *4 (Ohio Ct. App. Aug. 31, 1981)). In *Coleman v. Mitchell*, we held that "[b]efore the Ohio Supreme Court's decision in *Murnahan*, it was well established in [Hamilton County], the appellate district in which Coleman's appeal was heard, that claims of ineffective assistance of appellate counsel were to be raised in a delayed motion for reconsideration and were not cognizable in state post-conviction proceedings." 244 F.3d 533, 540 (6th Cir. 2001). In *Hicks v. Collins*, we held that a petitioner had procedurally defaulted his ineffective assistance of appellate counsel claim because *Murnahan's* rule was "well settled" in Hamilton County by September of 1992 and was therefore an independent and adequate state ground. 384 F.3d 204, 212 (6th Cir. 2004). Based on the foregoing, there is no question that Ohio courts' application of *Murnahan's* good cause exception does not fail the third prong of the *Maupin* test.

The majority attempts to distinguish *Hicks* by noting that the petitioner in that case filed his motion prior to the *Murnahan* decision, which the majority views as overriding the ten-day period allotted to motions for reconsideration. I think the majority over-states *Murnahan*. That case explicitly stated that motions such as Franklin's should be filed "in the court of appeals where the

---

[1] Although the majority asserts that the *Murnahan* rule was not enforced by Ohio courts, it cites nearly a dozen cases enforcing the rule over the five-year period immediately following Franklin's motion. Furthermore, Sixth Circuit precedent establishes that the rule was applied in Hamilton County, where Franklin appeared, as early as 1983. *See Sowell v. Bradshaw,* 372 F.3d 821, 827 n.2 (6th Cir. 2004) (citing *Ohio v. Rone*, No. C-820640, 1983 WL 5172, at *4 (Ohio Ct. App. Aug. 31, 1981)).

alleged error took place pursuant to App. R. 26 . . . ."  *State v. Murnahan*, 584 N.E.2d 1204, 1209 (Ohio 1992).  In light of the court's directive, it cannot be said that Franklin was not apprised of the rule for purposes of the *Hutchinson* and *Ford* cases.  The fact that Rule 26 was later amended to extend the filing period is irrelevant.  Consequently, there is little to distinguish Franklin's case from the *Hicks* case.  I would hold that his claims are procedurally barred.